UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 19-CR-0193 (PJS/LIB) |
| Plaintiff, | |
| v. | ORDER |
| AMANDA MAY WALSH (1) and MATTHEW JAMES GUNDERSON (2), | |
| Defendants. | |

---

Manda M. Sertich, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

John S. Hughes, for defendant Amanda May Walsh.

Kevin C. Cornwell, for defendant Matthew James Gunderson.

Defendants Amanda May Walsh and Matthew James Gunderson are charged with various child-pornography offenses. Both Walsh and Gunderson brought motions to suppress statements made to law enforcement [ECF Nos. 45, 53], motions to suppress physical evidence [ECF Nos. 46, 52], and motions to sever their trials [ECF Nos. 44. 54]. In a Report and Recommendation ("R&R") issued on December 6, 2019, Magistrate Judge Leo I. Brisbois recommended denying defendants' motions. ECF No. 75. Gunderson has not filed an objection to the R&R, but Walsh objects to the R&R in two respects: First, she objects to the recommended denial of her motion to suppress

evidence derived from the search of Minor A's cell phone. ECF No. 52. Second, she objects to the recommended denial of her motion to sever. ECF No. 54.[1]

The Court has reviewed de novo those portions of the R&R to which Walsh objects. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). Based on that review, the Court agrees with Judge Brisbois that both motions should be denied, and the Court adopts the R&R to the extent that it is consistent with this order.

## I. BACKGROUND

The relevant facts are described in the R&R and only briefly summarized here.

Walsh and Minor A lived in a home that they shared with Walsh's parents and with Walsh's niece and her husband (Savannah and Dustin Clark). *See* Gov. Ex. 8 at 00:29-04:48. On the evening of February 9, 2019, Walsh agreed to let Dustin Clark borrow Minor A's cell phone, so that Dustin could use the phone while he was at work the next day. *Id.* at 01:45-02:04. After Walsh gave Minor A's phone to the Clarks, they discovered text messages on the phone that were sexual in nature. *Id.* at 02:09-02:40. They also discovered nude images of Minor A that had been sent to Gunderson (Walsh's boyfriend). *Id.* at 03:19-04:48; Gov. Ex. 6 at 11:10; Gov. Ex. 1 at 00:17-01:13.

---

[1]Walsh withdrew her motion to suppress confessions and statements [ECF No. 53] after the government informed her that it does not intend to use in its case-in-chief the statement that she made to law-enforcement officers on February 10, 2019 [ECF No. 70 at 1; ECF No. 56 at 19].

Dustin then called 911 to request that an officer be dispatched to the residence. Gov. Ex. 1.

When Aitkin County Sheriff's Deputy Keith Bennett arrived a short time later, the Clarks met him in the driveway. ECF No. 71 at 25. The Clarks, who were "frantic," told Deputy Bennett that they had discovered sexually explicit messages and nude pictures of Minor A on a phone that they had borrowed from Walsh. *Id.* at 26-28. The Clarks began scrolling through the phone in Deputy Bennett's presence, reading the text messages aloud, and turning the phone to show Deputy Bennett nude images of Minor A. *Id.* at 28-30. Deputy Bennett testified that at no point did he tell the Clarks to look at any images or text messages on Minor A's phone, and that it was his understanding that the Clarks had already examined the phone's contents before he arrived. *Id.* at 58.

After speaking to the Clarks, Deputy Bennett took the phone and locked it in his patrol vehicle. *Id.* at 30. He then went inside to speak with Walsh. During the course of their conversation, Walsh gave written consent to search Minor A's phone and two other phones belonging to Walsh. *Id.* at 35-36; Gov. Ex. 5; Gov. Ex. 6 at 14:55-15:40. Later, law enforcement obtained warrants to search the three phones and Walsh's TextNow account. Gov. Exs. 9, 10, 12.

II.  ANALYSIS

*A.  Motion to Suppress Evidence*

Walsh argues that Dustin Clark acted as an agent of the government—and violated the Fourth Amendment—when he shared the contents of Minor A's phone with Deputy Bennett.  Walsh further argues that, because the search warrants were based on the images and messages that Clark found on Minor A's phone, evidence recovered through the execution of those warrants must be suppressed as the fruit of the poisonous tree.[2]

"Whether a private party should be deemed an agent or instrument of the Government for Fourth Amendment purposes necessarily turns on the degree of the Government's participation in the private party's activities, a question that can only be resolved in light of all the circumstances."  *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614 (1989) (internal citations omitted).  The Eighth Circuit directs courts to

---

[2]The parties' submissions and the evidence in the record consistently refer to the phone at issue as belonging to Minor A.  But in a recorded statement, Walsh said that she owns the phone, and that she regularly uses the phone, particularly when her primary cell phone is not working.  *See* Gov. Ex. 6 at 04:00-04:30, 12:08-12:25.

Given that the government has not argued that Walsh lacked a reasonable expectation of privacy in Minor A's phone—and given that the phone was owned and sometimes used by Walsh—the Court assumes that Walsh had a reasonable expectation of privacy in the phone.  Put differently, the Court assumes that Walsh has what is "often loosely—and misleadingly" referred to as "standing" to challenge the search of the phone under the Fourth Amendment.  *United States v. Foster*, 763 F. Supp. 2d 1086, 1087 (D. Minn. 2011).

specifically consider: "[1] whether the government had knowledge of and acquiesced in the intrusive conduct; [2] whether the citizen intended to assist law enforcement or instead acted to further his own purposes; and [3] whether the citizen acted at the government's request." *United States v. Highbull*, 894 F.3d 988, 992 (8th Cir. 2018) (citation and quotation marks omitted). "A defendant bears the burden of proving by a preponderance of the evidence that a private party acted as a government agent." *Id.* (citations omitted).

Applying this framework, Judge Brisbois found that all three factors supported the conclusion that Dustin Clark was not acting as a government agent. The Court respectfully disagrees with Judge Brisbois about the first factor, but the Court agrees with his analysis of the second and third factors and with his ultimate conclusion that Dustin Clark was acting as a private citizen, and not as a government agent, when he shared the contents of Minor A's phone with Deputy Bennett.[3]

As noted, the first factor asks "whether the government had knowledge of and acquiesced in the intrusive conduct." *Id*. Judge Brisbois found that the government could not have known of the intrusive conduct in this case because the Clarks examined

---

[3]Because the Court finds that Dustin Clark was not acting as a government agent, the Court does not address whether the second search falls within an exception to the warrant requirement—or, if it does not, whether the results of the search can nevertheless be introduced into evidence under an exception to the exclusionary rule (such as the inevitable-discovery exception, *see Nix v. Williams*, 467 U.S. 431 (1984)).

the contents of Minor A's phone before Dustin called 911. But Walsh does not challenge *that* examination of the phone; instead, she challenges the *second* examination of the phone (that is, the examination conducted by the Clarks in front of Deputy Bennett).[4] It

---

[4]Courts have held that, when the government re-examines an item following a private search of the same item, the government does not need a warrant. *United States v. Starr*, 533 F.3d 985, 994 (8th Cir. 2008). But this exception to the warrant requirement— known as the "private-search doctrine"—applies only when "the governmental intrusion goes no further than the private search." *Id* at 995.

Here, the government has not asserted that the Clarks' second search of the phone (after Deputy Bennett arrived) was coextensive with their first search of the phone (before Dustin called 911), and nothing in the record would clearly support such an assertion. The only record evidence concerning the scope of the first search is the content of Dustin's 911 calls. Dustin tells the dispatcher that Walsh is "sending pictures of [Minor A] to another man. And in the conversation she's talking about how she put her fingers in [Minor A] that's 10- 11-years old and his tip [inaudible] penis. . . . She's sending naked photos of an 11-year old girl . . . they raped [Minor A], she raped [Minor A]." Gov. Ex. 1 at 00:17-01:03. Later, in a recorded statement taken at the scene following the second search of the phone, Dustin states that he "saw a glimpse" of one image in which Minor A's chest was exposed before he called 911. Gov. Ex. 8 at 05:53-06:20. Savannah describes the text messages and images in greater detail in her own recorded statement, but this statement was taken after the second search of the phone, and Savannah does not clearly differentiate between what was found during the first search and what was found during the second search. Gov. Ex. 7.

The scope of the second search is also not clearly defined in the record, but in his recorded interview with Walsh, Deputy Bennett tells Walsh that the Clarks showed him an image on the phone of Minor A posing on her hands and knees. Gov. Ex. 6 at 36:50. Nothing in the record makes clear that the Clarks saw this particular image during the first search. For the purpose of ruling on the suppression motions, then, the Court will not rely on the private-search doctrine, but will instead assume that the second search exceeded the scope of the first search. *See United States v. Lichtenberger*, 786 F.3d 478 (6th Cir. 2015) (private search of laptop containing child pornography was not coextensive with later governmental search, given that the private party could not recall if the

(continued...)

was at this point—after Deputy Bennett's arrival—that, according to Walsh, Dustin Clark began acting as a government agent. *See* ECF No. 76 at 3 ("At the time the phone was shown to Dep. Bennett, Dustin was no longer acting in his capacity as a private citizen, but as a government agent.").

Judge Brisbois next finds that the government did not have knowledge of the intrusive conduct because Deputy Bennett did not know that Dustin Clark did not have Walsh's consent to look through the phone. ECF No. 75 at 31. But the relevant inquiry is not whether the private citizen had the legal right to search or seize the property in question. The relevant inquiry is whether the government was aware of the complained-of search or seizure as it was occurring. In *United States v. Highbull*, for example, the defendant (Highbull) challenged a private citizen's search of his car, arguing that the private citizen had acted as a government agent. 894 F.3d at 990. The Eighth Circuit held that the government had knowledge of the intrusive conduct because an officer at the scene observed the private citizen enter the car. *Id.* at 990-92. The Eighth Circuit did not even mention the question of whether the private citizen had Highbull's consent to enter his car; instead, the Eighth Circuit treated the issue as irrelevant. *See also United States v. Wiest*, 596 F.3d 906, 910 (8th Cir. 2010) (government

---

⁴(...continued)
images she opened for responding officer were the same images she had previously viewed).

had knowledge of relevant conduct where private citizen removed defendant's clothing from citizen's washer and dryer and gave the clothing to a police officer on the scene); *cf. United States v. Malbrough*, 922 F.2d 458, 460-62 (8th Cir. 1990) (government was not aware of and did not acquiesce in private citizen's conduct where citizen observed marijuana being grown in a greenhouse and called detective to report it).

The intrusive conduct about which Walsh complains is Dustin Clark's possession and examination of Minor A's phone after the arrival of Deputy Bennett. Because Deputy Bennett knew that the Clarks were showing him images and reading him text messages from a phone that did not belong to them—and because Deputy Bennett did nothing to dissuade the Clarks from doing so—the government had knowledge of and acquiesced in the relevant conduct. *See* ECF No. 71 at 26-29. Thus, the first factor counsels in favor of finding that Dustin acted as a government agent.

That said, the government's knowledge and acquiescence, standing alone, do not transform Dustin Clark's actions into those of a government agent. *See Highbull*, 894 F.3d at 992-93 (although officer knew of and acquiesced in intrusive conduct, private party was not a government agent); *Wiest*, 596 F.3d at 910 (same). The Court must also weigh the second and third factors. With respect to those factors, the Court agrees with Judge Brisbois's thorough analysis. The Court also agrees with Judge Brisbois's

ultimate conclusion that Dustin Clark was not acting as an agent of the government when he shared the phone's contents with Deputy Bennett.

The Court does not find this to be a close question. Based on images and messages that they saw during their private examination of Minor A's phone, the Clarks concluded that Minor A had been sexually exploited by Walsh and that explicit images of Minor A had been sent to Gunderson. In order to protect Minor A—to whom they were related, and with whom they lived—the Clarks called 911 and asked that a law-enforcement officer be dispatched to their home. *See* Gov. Ex. 1; Gov. Ex. 8 at 06:15-07:00. After Deputy Bennett arrived, he listened as the Clarks described and displayed evidence that they found on Minor A's phone. Deputy Bennett was a passive recipient of information; he did nothing to direct or encourage the Clarks to examine the phone or share its contents with him. ECF No. 71 at 58.

Based on the evidence in the record, the Court cannot find that Dustin Clark acted as an agent of the government. The Court therefore denies Walsh's motion to suppress evidence derived from the search of Minor A's phone and evidence derived from the searches of Walsh's other two phones and TextNow account.

### B. Motion to Sever

Walsh objects to Judge Brisbois's recommendation that the Court deny her motion to sever her trial from Gunderson's. In so recommending, Judge Brisbois

declined to consider an untimely memorandum filed by Walsh, but noted that even if he considered the memorandum, he would make the same recommendation. ECF No. 75 at 13 n.15; ECF No. 74. In the memorandum, Walsh explained that "her defense, should she choose to go to trial, will be that she was at all relevant times acting under duress." ECF No. 74 at 2. Specifically, Walsh intends to argue that Gunderson was physically and verbally abusive to her, and that her alleged criminal acts resulted from her fear of Gunderson. Walsh argues that her testimony in support of this defense "will be highly prejudicial" to Gunderson, and asks for severance on this basis. *Id.*

Under Fed. R. Crim. P. 14(a), a court may sever the defendants' trials if a joint trial would "prejudice a defendant or the government." "This prejudice must be 'severe or compelling.'" *United States v. Anderson*, 783 F.3d 727, 743 (8th Cir. 2015) *(*quoting *United States v. Casteel*, 663 F.3d 1013, 1018 (8th Cir. 2011)). "To demonstrate this prejudice, 'a defendant must show that his defense was irreconcilable with that of the codefendant or that the jury was unable to compartmentalize the evidence.'" *Id.* (quoting *United States v. Lewis*, 557 F.3d 601, 609 (8th Cir. 2009)). "The mere existence of generally antagonistic defenses does not necessitate a severance." *United States v. Jones*, 880 F.2d 55, 63 (8th Cir. 1989). Instead, defenses are deemed irreconcilable only when they "so conflict that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *Id.* (citation and quotation marks omitted).

Based on the record before it, the Court cannot conclude that Walsh's proposed duress defense requires separate trials. The Court does not know how Gunderson intends to defend himself, and thus it is impossible for the Court to determine whether the jury, in order to believe Walsh's duress defense, will necessarily have to disbelieve Gunderson's defense. The Court also cannot determine whether the jury will have difficulty compartmentalizing the evidence introduced against Walsh from the evidence introduced against Gunderson. The Court notes, however, that although Walsh bases her motion on the prejudice that *Gunderson* might suffer, Gunderson himself has not objected to Judge Brisbois's recommendation that his motion to sever be denied.

The Court will deny both motions to sever without prejudice. The defendants may renew their motions at the pretrial conference, if they believe that they can demonstrate that this is the "unusual case" in which "the prejudice resulting from a joint trial [will] be substantial enough to outweigh the general efficiency of joinder." *United States v. Al–Esawi*, 560 F.3d 888, 891 (8th Cir. 2009).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, the Court OVERRULES Walsh's objection [ECF No. 76] and ADOPTS the R&R [ECF No. 75] to the extent that it is consistent with this order. IT IS HEREBY ORDERED THAT:

1. Defendant Gunderson's motion to sever defendant [ECF No. 44] is DENIED WITHOUT PREJUDICE.

2. Defendant Gunderson's motion to suppress confession or statements in nature of confession [ECF No. 45] is DENIED.

3. Defendant Gunderson's motion to suppress evidence obtained by warrant [ECF No. 46] is DENIED.

4. Defendant Walsh's motion to suppress evidence obtained in violation of the Fourth Amendment [ECF No. 52] is DENIED.

5. Defendant Walsh's motion to sever defendant [ECF No. 54] is DENIED WITHOUT PREJUDICE.

Dated: January 17, 2020         s/Patrick J. Schiltz
                                Patrick J. Schiltz
                                United States District Judge